ORIGINAL

# In the United States Court of Federal Claims

FILED

AUG 21 2013

U.S. COURT OF FEDERAL CLAIMS

No. 11-134T

(Filed: August 21, 2013)

**********************************

| | | |
|---|---|---|
| **ROBERT M. HEGER,** **Plaintiff,** v. **UNITED STATES,** **Defendant.** | ) | Claim for refund of taxes paid; counterclaim for taxes allegedly due; summary judgment; RCFC 56; forfeiture of fraudulent claims; 28 U.S.C. § 2514; proof of income received subject to taxation |

**********************************

Robert M. Heger, *pro se*, Bozeman, Montana.

Gregory S. Knapp, Attorney, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Kathryn Keneally, Assistant Attorney General, David I. Pincus, Chief, and Mary M. Abate, Assistant Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

Plaintiff, Robert M. Heger, seeks to recover $312,116.11 in income taxes, penalties, and interest paid for tax years 1996 through 2001. These funds were remitted to the Internal Revenue Service ("IRS") by a title company following the sale of an inherited property in 2008. The United States ("the government") has in turn filed a counterclaim for $36,025.17 in additional taxes, penalties, and interest, alleging that Mr. Heger failed to pay required income tax for the 2006 tax year. The court previously denied a motion for partial summary judgment filed by the taxpayer. *See Heger v. United States*, 103 Fed. Cl. 261 (2012). Currently before the court is the government's motion for summary judgment on both Mr. Heger's claim and its own counter- claim. In support of its motion, the government contends that it has provided the court with sufficient documentation to establish Mr. Heger's liability for the taxes, penalties, and interest at issue in both instances. Additionally, as a further ground for summary judgment on Mr. Heger's claim, the government argues that Mr. Heger has forfeited his claim for refund through the operation of 28 U.S.C. § 2514 by making false representations at a level which constitutes fraud. The government's motion has been briefed and argued, and is now ready for disposition.

## BACKGROUND[1]

Mr. Heger generally objects to the assessment of federal income tax. *See* Pl.'s Opp'n to Def.'s Mot. for Summary Judgment and Mem. in Support ("Pl.'s Opp'n") at 4-5 ("[Mr.] Heger's core claim that his income, i.e., wages and salary, is not taxable income is his sincerely held personal belief."), ECF No. 55. From 1996 to 2001, Mr. Heger omitted to file tax returns with the IRS. *See* Compl. ¶¶ 6-8; Def.'s Proposed Findings of Uncontroverted Fact in Support of its Mot. for Summary Judgment ("Def.'s Proposed Findings") ¶¶ 6, 11-12, ECF No. 50. In March 2008, Cornerstone Title Company ("Cornerstone") issued two checks to the IRS in the amounts of $311,640.36 and $475.75, which amounts had been assessed by the IRS for taxes, penalties, and interest allegedly owed by Mr. Heger for the period of 1996 to 2001. Compl. ¶ 5; Addendum to Pl.'s Mot. for Partial Summary Judgment ("Pl.'s Addendum"), Exs. B-1, B-2 (photocopy of checks issued by Cornerstone to IRS), ECF No. 21.[2] These payments were made from the proceeds of a sale of property belonging to Mr. Heger, to which the IRS had attached liens. Compl. ¶ 5.

Mr. Heger sought a refund of the amount disbursed by Cornerstone by submitting a letter to the IRS Commissioner in Washington, D.C. on November 24, 2008. *See* Pl.'s Addendum, Ex. A (letter from Mr. Heger to IRS Commissioner).[3] In this letter, Mr. Heger claimed that he was entitled to a full refund because he "did not have any taxable income" during the relevant period. *Id.* After a year and a half passed with no response from the IRS, Mr. Heger made a request for records from an IRS office in Chamblee, Georgia, invoking the Freedom of Information Act. Notice of Errata, Ex. A (Letter from Mr. Heger to IRS District Director (Sept. 27, 2010)), ECF No. 31. Mr. Heger sought in this letter to receive copies of notices of deficiency and proof of mailing of these notices, related to the income taxes assessed by the IRS for 1996 through 2001. *Id.* Again, the IRS did not respond. *Heger*, 103 Fed. Cl. at 262. At some point during the interim between the 1996 through 2001 tax years and the present day, the IRS either lost or destroyed most of its files relating to Mr. Heger's tax assessments for those years. *See* Def.'s Mot. for Summary Judgment ("Def.'s Mot.") at 1-2, ECF No. 49.

---

[1]The recitation of background information does not constitute findings of facts by the court and is given solely to provide a context for deciding the current motions. Unless otherwise noted, however, the circumstances appear to be undisputed.

[2]Plaintiff's Addendum was filed in connection with his motion for partial summary judgment which was previously denied. *See Heger*, 103 Fed. Cl. at 266-68. At the time of the earlier decision, "although the court strongly disfavors seriatim motions for summary judgment," the court invited "either party [to] move for summary judgment in the future if the party can demonstrate, after adequate time for discovery, a record free of genuine disputes of material fact." *Id.* at 267 (citing *Metropolitan Life Ins. Co. v. Bancorp Servs., L.L.C.*, 527 F.3d 1330, 1336-37 & n.3 (Fed. Cir. 2008)).

[3]While many of Mr. Heger's initial documents submitted to the IRS and, subsequently, to the court, identify the amount of $311,640.36, Mr. Heger has since revised his request to encompass the additional amount of $475.75 also remitted to the IRS by Cornerstone. *See* Pl.'s Answer to Counterclaim ¶ 1, ECF No. 8.

On March 2, 2011, Mr. Heger filed the present action in this court, seeking to recover the amount paid by Cornerstone to the IRS in discharge of the lien. The government answered Mr. Heger's claims and asserted a counterclaim of $36,025.17 for taxes allegedly left unpaid by Mr. Heger in the 2006 tax year. *See* Def.'s Answer and Counterclaim, ECF No. 6. The government alleges that Mr. Heger received income in 2006 derived from two distributions from a life insurance annuity, which Mr. Heger failed to report to the IRS but which were reported by the insurance company making the disbursements. Def.'s Mot. at 3.

On August 23, 2011, Mr. Heger moved for partial summary judgment on his own refund claims for the 1996 through 2001 period, presenting a two-pronged argument: first, that he had no taxable income during those years, and second, that the IRS failed to provide notice of the alleged deficiencies as is required prior to collection. Pl.'s Mot. for Partial Summary Judgment at 1-2, ECF No. 9. On October 26, 2011, the government moved to dismiss Mr. Heger's complaint in part, pointing to Mr. Heger's 2008 letter to the IRS Commissioner to show that he raised only the no-taxable-income argument at the administrative level, and thus the court lacked jurisdiction to address the lack-of-notice claim under the "substantial variance" doctrine. *See* Def.'s Mot. to Dismiss Compl. in Part at 1, 4-5, ECF No. 23.

On January 20, 2012, the court held that it lacked jurisdiction over the notice-of-deficiency aspect of Mr. Heger's claim and granted the government's motion to dismiss the complaint in part. *Heger*, 103 Fed. Cl. at 265. The court ruled that it had jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), over the surviving claims. *See id.* at 263-65. Regarding Mr. Heger's motion for partial summary judgment, the court concluded that Mr. Heger had failed to bring forward "credible evidence" as required by 26 U.S.C. ("I.R.C.") § 7491(a)(1) to support his claim, but instead he had rested on bare assertions made in his pleadings and declarations, many of which posited facts strenuously disputed by the government. *Id.* at 266. Accordingly, the court denied Mr. Heger's motion for summary judgment and urged the parties to pursue discovery with an eye to possible motions for summary judgment going forward. *Id.* at 267-68.

On December 7, 2012, the government filed a motion for summary judgment on both Mr. Heger's original claim and its own counterclaim.[4] Briefing and a hearing on the motion has

---

[4]On that same day, the government also filed a motion to amend its pleadings pursuant to Rule 15(a)(2) of the Rules of the Court of Federal Claims ("RCFC"), to incorporate an affirmative defense under the Forfeiture of Fraudulent Claims statute, 28 U.S.C. § 2514. Def.'s Mot. for Leave to File . . . First Am. Answer and Counterclaim, ECF No. 51. This motion is premised on discovery that took place following the court's prior decision, which discovery the government contends revealed documentation allegedly demonstrating Mr. Heger's fraud in statements to the IRS and to the court. *Id.* at 2.

The court is not always inclined to grant such motions if the moving party has unduly delayed action to amend its pleadings after gaining knowledge of the need for amendment. *See Rockwell Automation, Inc. v. United States*, 70 Fed. Cl. 114, 124 (2006) (denying a similar motion because the government delayed eight years in amending its filing). However, short of such circumstances, the court "should freely give leave when justice so requires." RCFC 15(a)(2); *see Foman v. Davis*, 371 U.S. 178, 182 (1962); *Te-Moak Bands of W. Shoshone Indians of Nev. v. United States*, 948 F.2d 1258, 1260-61 (Fed. Cir. 1991); *System Fuels, Inc. v. United*

taken place, and accordingly the government's motion for summary judgment is ready for disposition.

## STANDARDS FOR DECISION

Summary judgment can be granted only in the absence of a "genuine dispute as to any material fact." RCFC 56(a). Material facts are those which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute to be genuine, it must be capable of being "reasonably . . . resolved in favor of either party." *Id.* at 250. If inferences must be drawn, the court must view them "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The proponent of the motion may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in support. RCFC 56(c)(1)(A). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," the court will grant summary judgment. *Matsushita*, 475 U.S. at 587.

In a suit for tax refund, generally "'the taxpayer bears the burden of establishing the right to a refund.'" *Stobie Creek Invs., LLC v. United States*, 82 Fed. Cl. 636, 663 (2008) (quoting *Abrahamsen v. United States*, 228 F.3d 1360, 1364 (Fed. Cir. 2000)), *aff'd*, 608 F.3d 1366 (Fed. Cir. 2010). In its prior opinion, this court noted both that Mr. Heger bears that burden but also that the government is required first to make a *prima facie* case for its assessment of the pertinent penalty. *See Heger*, 103 Fed. Cl. at 267 ("Mr. Heger bears the burden of proof. . . . This is so even though the government faces a major obstacle of its own, *i.e.*, that it reportedly has lost or destroyed the administrative file for Mr. Heger's tax years prior to 2001. . . . [W]hile the loss of a taxpayer-plaintiff's IRS administrative file 'd[oes] not shift the burden of proof . . . , it d[oes] require [the government] to show that a *prima facie* case for the assessment of the penalty exist[s], *i.e.*, that the assessment was not naked.'" (quoting *Jenkins v. United States*, 101 Fed. Cl. 122, 130 (2011))).

## ANALYSIS

### A. *Summary Judgment on Plaintiff's Claim*

In moving for summary judgment in its favor on the original claim filed by Mr. Heger for a refund of income taxes for the years 1996 through 2001, the government contends that its assessments are far from "naked," and that Mr. Heger has failed to meet his own burden of establishing his right to a refund of the assessed and collected amounts. Def.'s Mot. at 7-11. The court agrees.

---

*States*, 65 Fed. Cl. 163, 173 n.9 (2005). The government filed its motion within months of obtaining the documents which form the basis of this affirmative defense; accordingly, the court GRANTS the government's motion to amend its pleadings to incorporate the affirmative defense of forfeiture.

In support of its motion, the government points to third-party payer information which forms the basis of its assessment of income tax for those periods. Def.'s Mot. at 8. Although the original IRS files have been lost or destroyed, the court will consider the submission of third-party payer information as evidence of the basis for the income tax assessments for the purposes of the summary judgment motion. *See Jenkins*, 101 Fed. Cl. at 130 (permitting the government to present evidence demonstrating the existence of income and tax liability at trial, even though the original IRS files had been lost).[5] This documentation, supplied to the IRS by Mr. Heger's former employers, allows the IRS to calculate and show Mr. Heger's income and thus income tax liability, even though he did not himself report the income. *See, e.g.*, Def.'s Mot., App., Ex. 8 (Decl. of Irene S. Tse, IRS Revenue Agent) ¶¶ 9-10; Ex. 9 at A-188 to -89 (Letter from IRS to Mr. Heger (May 25, 2004) (explaining method of assessment for 2001 income tax)). Unlike the proverbial emperor, the government in this case has clothed its assessments in substantial raiment, consisting of documentation of Mr. Heger's employment and receipt of taxable income for each of the years encompassed in Mr. Heger's original complaint. *See* Def.'s Mot., App., Ex. 1 (certificates of assessments of Mr. Heger's income tax); Ex. 3 (NetApp, Inc. documentation of Mr. Heger's employment and income); Ex. 5 (Molecular Dynamics, Inc. documentation of Mr. Heger's employment and income).

Mr. Heger has not refuted the documentation provided by the government of his employment and income during the tax years 1996 through 2001. His response to the government's motion for summary judgment has instead focused on attacking the government's alternate ground for summary judgment, forfeiture (discussed *infra*). *See* Pl.'s Opp'n, *passim*. Mr. Heger's other submissions have objected to the admissibility of the government's documentation, discussed *supra* n.5, without addressing the veracity of the documentary contents. *See* Pl.'s Second Opp'n, *passim*. In short, Mr. Heger has pointed to no material fact which remains in dispute after the government's demonstration of his employment and income during the relevant time period. No rational trier of fact could find that Mr. Heger is entitled to a refund. Accordingly, summary judgment in the government's favor on the plaintiff's original claim is appropriate.

B. *Forfeiture of Plaintiff's Claim*

In the alternative to its merits arguments, the government contends that it is also entitled to summary judgment on Mr. Heger's original claim pursuant to the Forfeiture of Fraudulent

[5]Mr. Heger has objected to the government's submission of many documents obtained by the government during discovery, characterizing declarations as mere hearsay and documentation as unverifiable and thus inadmissible. Pl.'s Second Opp'n to Def.'s Mot. for Summary Judgment ("Pl.'s Second Opp'n") at 3-7, ECF No. 63. Mr. Heger's objection is premised on a misapprehension of the pertinent rules. As noted *supra*, motions for summary judgment may be supported by such things as "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." RCFC 56(c)(1)(A). Those materials need not necessarily meet the requirements of the Federal Rules of Evidence for admissibility, but here, in actuality, all of the materials supplied by the government could be admissible at trial, provided proper foundational requirements were satisfied.

Claims statute, 28 U.S.C. § 2514. Def.'s Mot. at 11-14. Under the statute, a plaintiff forfeits his or her entire claim against the United States if he or she "corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof." 28 U.S.C. § 2514. In the context of tax refund suits, this court has referred to this statute as a "silver bullet," holding that even any "*attempted* fraud against the United States" is sufficient to cause forfeiture of the entire suit. *Farkas v. United States*, 57 Fed. Cl. 134, 146 (2003) (emphasis in original). Fraud perpetrated on behalf of one portion of the claim cannot be severed from the remainder of the claim; fraud in one aspect of the case forfeits the whole. *See DeRochemont v. United States*, 23 Cl. Ct. 87, 89-90 (1991) (citing *Little v. United States*, 152 F. Supp. 84, 87-88 (Ct. Cl. 1957)). Fraud must be shown by clear and convincing evidence, which can be demonstrated by "placing the questioned documents and statements alongside well-known and established facts." *Kamen Soap Prods. Co. v. United States*, 124 F. Supp. 608, 620 (Ct. Cl. 1954).

In the instant case, Mr. Heger has made misrepresentations to the court and to the government in pursuit of his desired refund. Indeed, the central premise of his suit is one which has proven to be patently false: that "any income [Mr.] Heger received for the years in question was not taxable." Compl. ¶ 7. Although Mr. Heger may genuinely object to assessment of income tax, *see* Pl.'s Opp'n at 4-5, a conscientious objection to income tax does not excuse use of false legal assertions to evade such taxes, *see Cheek v. United States*, 498 U.S. 192, 204-05 (1991). Mr. Heger's protestations of no taxable income are plainly contradicted by the documentation produced by the government, derived from multiple sources, of Mr. Heger's taxable income. Mr. Heger has contended that because he claims his no-taxation belief is "sincerely held," the question of whether he intended to commit fraud by denying receipt of taxable income is one for trial. Pl.'s Opp'n at 4-6. The court need not delve into Mr. Heger's motivation because his misrepresentations extend into a number of other factual areas.

In addition to claiming that he had no taxable income, Mr. Heger has steadfastly contended that he had no income whatsoever, and furthermore that he was unemployed during the relevant time periods. *See, e.g.*, Def.'s Mot., App., Ex. 12 at A-245 (Mr. Heger's responses to Special Interrogatories). As discussed *supra*, Mr. Heger was in actuality employed by at least two different companies during that time. *See id.*, App., Ex. 3 (NetApp, Inc. documentation of Mr. Heger's employment and income); Ex. 5 (Molecular Dynamics, Inc. documentation of Mr. Heger's employment and income). Mr. Heger has held to this fiction even to the point of propounding it directly to the court. Hr'g Tr. 20:15-18; 21:15-22 (Jan. 10, 2012). Placing Mr. Heger's statements side by side with the documentation produced by the government shows explicitly and convincingly that Mr. Heger has attempted to mislead the court to further his quest to avoid paying taxes. By doing so, Mr. Heger has forfeited the entirety of his original claim, and the government correspondingly prevails on its alternative ground for summary judgment.

C. *Summary Judgment on Government's Counterclaim*

The government has moved for summary judgment on its counterclaim of $36,327.92 for taxes, penalties and interest derived from the 2006 tax year. Def.'s Mot. at 14-18.[6] As in previous years, Mr. Heger declined to file any income tax returns or documents with the IRS, and consequently the IRS eventually prepared a "substitute for return" on his behalf. *See id.*, App., Ex. 1 at A-31 to -34 (2006 tax year IRS certificate of assessment) (reflecting the assessment and the lack of payment). The IRS audited Mr. Heger for the 2006 tax year and discovered that Hartford Life & Annuity Insurance Co. ("Hartford") had disclosed to the IRS two distributions from an annuity to Mr. Heger during that time period. *See id.*, App., Ex. 8 ¶¶ 4-7 (Decl. of Irene S. Tse, IRS Revenue Agent). The government has produced to the court documents reflecting the disbursements from Hartford Life, the first for the taxable amount of $87,149.97 and the second for the taxable amount of $13,626.64, for a total taxable amount of $100,776.61. *Id.*, App., Ex. 7 at A-134 to -35 (Hartford Forms 1099-R); Ex. 12 at A-241 (Letter from Hartford to Mr. Heger (Apr. 4, 2012) (confirming disbursement of annuity funds)).[7]

Mr. Heger has produced no countervailing evidence. Instead, he has rested on unsupported denials of the government's claims. *See* Pl.'s Answer to Counterclaim.[8] With the

---

[6]The government sought a base tax assessment of $20,183.00, plus an additional penalty of $4,541.18 for failure to timely file, pursuant to I.R.C. § 6651(a)(1), $4,743.00 for failure to pay the tax, pursuant to I.R.C. § 6651(a)(2), $955.14 for failure to pay estimated tax, pursuant to I.R.C. § 6654, and interest in the amount of $5,602.85 at the time of filing of the counterclaim, pursuant to I.R.C. § 6601. *See* Def.'s Supplemental Br. in Support of its Mot. for Summary Judgment, Ex. 19 (updated 2006 tax year IRS certificate of assessment), ECF No. 69.

Although the counterclaim as filed sought $4,743.00 for late payment, that amount must be increased pursuant to I.R.C. § 6651(a)(2), which imposes additional monthly penalties until payment is made. The statute provides that

> unless it is shown that such failure [to pay tax on a return specified in I.R.C. § 6651(a)(1)] is due to reasonable cause and not due to willful neglect, there shall be added to the amount shown as tax on such return 0.5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.

I.R.C. § 6651(a)(2). The penalty amount has accrued to its ceiling in the interim between filing of the counterclaim and this disposition. The court will treat the total requested relief as accordingly adjusted to add the further amount of $302.75.

[7]An additional $106,000 was included in the gross distribution, but that amount was not taxable and is not at issue here. Def.'s Mot., App., Ex. 7 at A-134 to -35 (Hartford Forms 1099-R).

[8]Based on Mr. Heger's responses to the government's interrogatories, the government apparently anticipated some argument regarding the taxable nature of his annuity income. *See*

exception of his general evidentiary objections to the documents proffered by the government, his briefing on the government's motion for summary judgment entirely avoids addressing the government's counterclaim. In the circumstances, the court finds that the government has adequately supported its counterclaim, there are no genuine disputes as to any of the material facts, and the government's motion for summary judgment on its counterclaim is GRANTED.

## CONCLUSION

For the reasons stated, the government's motion for summary judgment on the plaintiff's original claim and on the government's counterclaim is GRANTED. Mr. Heger is not entitled to a refund of the taxes assessed and collected for the tax years 1996 through 2001. Additionally, Mr. Heger must remit to the government payment of his tax liability for the tax year 2006, in the amount of $36,327.92 plus any additional interest accruing to the date of his payment.

The clerk is directed to enter judgment for defendant and against plaintiff as specified.

No costs.

It is so ORDERED.

Charles F. Lettow
Judge

---

Def.'s Mot. at 15-16. However, no such argument has materialized in any filings made to the court and consequently it will not be considered.