ORIGINAL

FILED

JAN 1 6 2014

U.S. COURT OF
FEDERAL CLAIMS

# In the United States Court of Federal Claims

No. 11-134T

(Filed: January 16, 2014)

*************************************

|  |  |
|---|---|
| **ROBERT M. HEGER,** ) | Post-judgment request by the government |
| ) | for attorneys' fees and expenses under the |
| ) | Equal Access to Justice Act, 28 U.S.C. |
| Plaintiff, ) | § 2412(b); common law principles |
| ) | applicable to award of attorneys' fees to |
| v. ) | the government; premature filing of fee |
| ) | application under EAJA; calculation of |
| **UNITED STATES,** ) | reasonable fees |
| ) | |
| Defendant. ) | |
| ) | |

*************************************

Robert M. Heger, *pro se*, Bozeman, Montana.

Gregory S. Knapp, Attorney, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Kathryn Keneally, Assistant Attorney General, David I. Pincus, Chief, and Mary M. Abate, Assistant Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

In this tax refund suit, plaintiff, Robert Heger, sought recovery of funds remitted to the Internal Revenue Service ("IRS") by a third party for income taxes due in 1996 through 2001. *See Heger v. United States*, 112 Fed. Cl. 224, 225-26 (2013) ("*Heger II*"); *Heger v. United States*, 103 Fed. Cl. 261, 262-63 (2012) ("*Heger I*"). Defendant, the United States ("the government"), counterclaimed for additional income taxes, penalties, and interest due for 2006. *Heger II*, 112 Fed. Cl. at 226. Through summary judgment, Mr. Heger's requested refund was denied and the government was awarded its counterclaim. *Id.* at 230. Based upon this result, the government has moved for an award of attorneys' fees pursuant to Rule 54(d)(2) of the Rules of the Court of Federal Claims ("RCFC"), the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(b), and the common law. *See* Def.'s Mot. for Attorneys' Fees ("Def.'s Mot."), ECF No. 72. The government argues that it is the prevailing party, that Mr. Heger engaged in bad faith in pursuing and participating in this litigation, and that it consequently is entitled to an award of reasonably calculated attorneys' fees totaling $30,344.00. Def.'s Mot. at 1-2, 8.

**BACKGROUND**

In March 2008, Cornerstone Title Company issued payments totaling $312,116.11, to the Internal Revenue Service ("IRS") from the proceeds of a sale of property owned by Mr. Heger, relieving liens that the IRS had placed on the property. *See Heger II*, 112 Fed. Cl. at 226. The liens had been instituted respecting income taxes, penalties, and interest owed by Mr. Heger for the tax years 1996 to 2001. *Id.* On November 24, 2008, after learning of the title company's payments, Mr. Heger submitted a letter to the IRS seeking a refund of the amounts disbursed by Cornerstone, claiming he did not have any taxable income during the relevant period. *Id.* When the IRS did not respond, Mr. Heger sought copies of the IRS's records, specifically its notices of deficiency relating to the income tax assessed for the relevant years and proof of mailing of the notices. *Id.* The IRS also did not respond to this further request. Among other things, at some point in the interim between 2001 and 2013, the IRS had lost or destroyed many of its files related to Mr. Heger's tax assessments for the 1996 through 2001 tax years. *Id.* at 226-27. The IRS nonetheless had maintained electronic records indicating its assessment of Mr. Heger's tax liability for the relevant years, including evidence of notices of deficiency. *See Heger I*, 103 Fed. Cl. at 267; *see also* Tr. 16:13 to 18:7 (Jan. 10, 2012).

On March 2, 2011, Mr. Heger filed suit for refund of the taxes that had been collected for the years 1996 through 2001, maintaining that he had no taxable income for those years and that the IRS failed to provide notice of any deficiencies. *Heger I*, 103 Fed. Cl. at 263-64. The government's answer was accompanied by a counterclaim for income taxes, penalties, and interest due from 2006. *Id.* at 263. Subsequently, Mr. Heger moved for partial summary judgment on his refund claims, pursuing his contention that he had no taxable income during the relevant years. *Id.* The government responded by, among other things, moving for partial dismissal of the complaint, pointing out that the court lacked jurisdiction over Mr. Heger's lack-of-notice claim because that contention was not raised in his letter to the IRS seeking a refund. *Id.* The court held a hearing on January 10, 2012 regarding the two pending motions. *See* Tr. 2:13-16 (Jan. 10, 2012). During this hearing, Mr. Heger stated that he had not been working between 1996 and 2001, and that he had no income or taxable income for this time period. *See* Tr. at 20:15-18 (Jan. 10, 2012) (Mr. Heger responded with "[n]o" when asked whether he was working between 1996 and 2001.), 21:19-22 (Jan. 10, 2012) (Mr. Heger stated that he had "no taxable income" and responded "no" to whether he had "any income" for the years in question.); *see also Heger II*, 112 Fed. Cl. at 229-30. Ten days later, on January 20, 2012, the court issued an opinion denying Mr. Heger's motion for partial summary judgment, citing a genuine dispute regarding material facts, *Heger I*, 103 Fed. Cl. at 267, and granting in part the government's cross-motion for partial dismissal due to the fact that Mr. Heger had never raised the lack-of-notice argument at the administrative level, *id.* at 265.

The case proceeded to discovery, and at the end of fact discovery the government filed a motion for summary judgment. Attached to its motion were numerous documents indicating that Mr. Heger was in fact employed by at least two different companies between 1996 and 2001, that he had received income from his employers, and that he had received additional income from other sources. *See Heger II*, 112 Fed. Cl. at 227, 229-30. Mr. Heger did not refute the government's evidence, but he did object to the government's contention that his claims for refunds should be barred based upon the Forfeiture of Fraudulent Claims statute, 28 U.S.C.

§ 2514. *Heger II*, 112 Fed. Cl. at 229. After conducting a hearing on the government's motion, the court requested additional briefing regarding the government's counterclaim. *See* Order of May 7, 2013, ECF No. 68. After the government submitted a supplemental brief explaining its calculation of tax liability, penalties, and interest for the counterclaim, *see* Def.'s Supplemental Br. in Support of Its Mot. for Summ. Judgment, ECF No. 69, the court granted the government's motion for summary judgment on both Mr. Heger's original claim and the government's counterclaim and ordered Mr. Heger to remit a total of $36,327.92 in tax liability for the 2006 tax year, plus interest. *Heger II*, 112 Fed. Cl. at 230-31. A day later, on August 22, 2013, judgment was entered in the case. On September 20, 2013, 29 days after judgment was entered, the government moved for attorneys' fees. *See* Def.'s Mot. The court held a telephonic hearing regarding this latest motion on November 26, 2013, and it is ready for disposition.

## ANALYSIS

The government's motion for attorneys' fees is premised upon 28 U.S.C. § 2412(b), which provides:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(b).[1] The statutory text specifies that the standard for a motion under this Subsection reflects the common law, absent an express statutory basis for a different criterion. No statute adjusting or deviating from the common law has been identified to, or found by, the court, and the court accordingly will apply common law rules. *See Centex Corp. v. United States*, 486 F.3d 1369, 1371, 1375 (Fed. Cir. 2007) (recognizing "the common law fee-shifting rule adopted . . . in [Sub]section 2412(b)"); *St. Paul Fire & Marine Ins. Co. v. United States*, 4

---

[1] By a wide margin, most of the applications for fees and expenses filed with the court pursuant to EAJA are submitted under a different subsection, 28 U.S.C. § 2412(d), which provides a mechanism for small entities and individuals with moderate or limited economic means to recover attorneys' fees and costs from the government if such entities and individuals prevail in litigation against the government and the government's actions were not substantially justified. *See Scarborough v. Principi*, 541 U.S. 401, 413-14 (2004). The government's motion for attorney's fees in this case is thus, relatively speaking, a rarity.

The standards applicable to awards under Subsections 2412(b) and (d) are markedly different. Notably, the standards for an award under Subsection 2412(b) are considerably more stringent and exacting than those under Subsection 2412(d).

3

Cl. Ct. 762, 766 (1984) (concluding that Subsection 2412(b) permits recovery "under the established rules of the common law").

A. *Timing*

RCFC 54(d)(2)(B) prescribes procedural requirements for a motion for attorneys' fees and provides that "[u]nless a statute or a court order provides otherwise, the motion must . . . be filed within 30 days after the date of final judgment, as defined in 28 U.S.C. § 2412(d)(2)(G)." Subsection 2412(d)(2)(G) defines "final judgment" as one that is "final and not appealable,"[2] but that definition is particular to Subsection 2412(d) and does not apply to Subsection 2412(b). As a consequence, the court statutorily cannot look to Subsection 2412(d) to provide timing requirements for Subsection 2412(b). Subsection 2412(b), the source of substantive law for this motion, does not provide any specific timing requirements. *See* 28 U.S.C. § 2412(b); *Firebaugh Canal Water Dist. v. United States*, Nos. 1:88-cv-00634 LJO DLB, 1:91-cv-00048 LJO DLB, 2012 WL 2339120, at *10 (E.D. Cal. June 19, 2012) ("EAJA's discretionary fee award provision[, 28 U.S.C. § 2412(b),] does not have a specific time restriction."). And, the court has not located any other statutory provision that would establish timing requirements for a motion under Subsection 2412(b).

Thus, the relevant window for filing a motion for attorneys' fees under Subsection 2412(b) is derived from RCFC 54(d), not a statute, and is a 30-day period commencing after the judgment is no longer appealable. This Rule serves purely procedural purposes, and consequently its timing aspects, *i.e.*, specifying the window for filing fee applications, is not jurisdictional. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-134 (2008) (addressing the different treatment of statutes of limitations that protect against stale claims and thus are raised as affirmative defenses and limiting statutes that serve broader "system-related goal[s]" and are deemed "jurisdictional"). Notably, even the statutory timing requirements provided in Subsection 2412(d) of EAJA are not jurisdictional but rather concern the relief a court may award. *See Scarborough*, 541 U.S. at 413-14; *Tippett v. United States*, 98 Fed. Cl. 171, 180 n.12 (2011) (citing *Scarborough*, 541 U.S. at 414). Consequently, when a party submits an EAJA application under Subsection 2412(d) prior to final judgment, this court has considered the submission as premature and has dismissed the application without prejudice. *See White Buffalo Constr., Inc. v. United States*, 101 Fed. Cl. 1, 23 (2011) (*citing M.A. DeAtley Constr. Inc. v. United States*, 71 Fed. Cl. 370, 372 n.1 (2006)), *vacated on other grounds by* __ Fed. Appx. __, No. 2012-5045, 2013 WL 5859688 (Fed. Cir. Nov. 1, 2013); *see also J.C.N. Constr., Inc. v. United States*, No. 12-353, 2013 WL 491013, at *1 (Fed. Cl. Feb. 8, 2013). In many of these situations, the opposing party moved to dismiss the EAJA application without prejudice before the filing window for EAJA had expired. *See J.C.N. Constr.*, 2013 WL 491013, at *1. The court's dismissal of an early EAJA application on these terms does not harm the filing party because the party can resubmit the application at a later appropriate time. *See id.* Alternatively, courts have deemed premature EAJA applications to have been subsequently filed during the appropriate thirty-day period. *See Brewer v. American Battle Monuments Comm'n*,

---

[2] In a suit where one of the parties is the federal government, as here, the time to file a notice of appeal is 60 days from a judgment. 28 U.S.C. § 2107(b).

4

814 F.2d 1564, 1567-69 (Fed. Cir. 1987); *Yankee Atomic Elec. Co. v. United States*, No. 98-126C, 2012 WL 2877398, at *1 (Fed. Cl. July 13, 2012).[3]

In coupling the viability of premature applications for attorneys' fees with the possible award of interim fees, the legislative history of EAJA indicates that Congress intended to allow parties to file fee applications before judgment was considered final. *See* H.R. Rep. No. 99-120, at 18 n.26, *reprinted in* 1985 U.S.C.C.A.N. 132, 146 n.26 ("Fee petitions may be filed before a 'final judgment.' If the court determines that an award of interim fees is inappropriate the petition should be treated as if it were filed during the thirty-day period following the final decision."). In this vein, Congress cautioned courts not to adopt an "overly technical approach" in dismissing fee petitions submitted early or use the timing requirements "as a trap for the unwary resulting in the unwarranted denial of fees." *Id.*

In this case, the government filed its motion for attorneys' fees under Subsection 2412(b) on September 20, 2013, 29 days after judgment was entered and 31 days before the judgment became final. Consequently, the motion was premature when judged against the timing specification of RCFC 54(d). Additionally, at this point in time over 30 days have passed since the judgment became final. Any rejection or a dismissal of the motion by the court on timing grounds would have the effect of barring the government from resubmitting its EAJA application.[4] Here, however, the fact that the application has been made under Subsection 2412(b), plus weight of precedent and legislative history respecting application of Subsection 2412(d), steer the court to deem the EAJA application to have been filed with effect prior to the closing date of the filing window. The government's motion for attorneys' fees therefore is considered to be timely, and the court will address the substance of the motion.

---

[3] The Supreme Court specifically declined to address this point in *Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991) (declining to decide whether a claimant for fees and expenses could "apply for fees at any time up to 30 days after entry of judgment and even before judgment is entered, as long as [the claimant had] achieved prevailing party status."). Subsequent cases have interpreted *Melkonyan* to allow courts to give effect to EAJA applications filed prior to final judgment. *See Cummings v. Sullivan*, 950 F.2d 492, 495 n.4 (7th Cir. 1991); *Perrini v. Barnhart*, No. Civ. A. 04-3893, 2005 WL 3831048, at *2 (W.D. Pa. Mar. 2, 2005) ("*Melkonyan* does not concern the issue of the earliest time at which a prevailing party may file for attorney fees under the EAJA . . . , but merely that the prevailing party could not file for attorney fees more than 30 days after the final judgment was rendered."); *see also Gonzalez v. United States*, 44 Fed. Cl. 764, 767-69 (1999) (allowing a premature application for fees under Subsection 2412(d) to be given effect).

[4] EAJA applications submitted more than 30 days after final judgment are untimely and dismissed for failure to state a claim upon which relief can be granted. *See Hernandez-Garcia v. Nicholson*, 485 F.3d 651, 652 (Fed. Cir. 2007) (upholding a trial court's dismissal of an EAJA application filed one day late) (citing *SAI Indus. Corp. v. United States*, 421 F.3d 1344 (Fed. Cir. 2005)).

5

B. *The Government's Ability to Invoke Subsection 2412(b) of EAJA*

Unlike Subsection 2412(d), which specifically excludes the government from recovering fees under that particular statutory scheme, *see* 28 U.S.C. § 2412(d)(1)(A) (allowing a court to award fees "to a prevailing party other than the United States"), Subsection 2412(b) allows an award of fees to a prevailing party generally. In this case, the government beyond question is the "prevailing party" as required under Subsection 2412(b). The court's grant of summary judgment in the government's favor on all material issues satisfies this requirement. *See GasPlus, L.L.C. v. United States Dep't of Interior*, 593 F. Supp. 2d 80, 85 (D.D.C. 2009). A plain reading of the statutory text allows the government to seek attorneys' fees under Subsection 2412(b). The first sentence in Subsection 2412(b) permits fees "to *the prevailing party* in any civil action by or against the United States" without qualification. 28 U.S.C. § 2412(b) (emphasis added). Additionally, the second sentence states that the "United States shall be liable . . . to the same extent that any other party would be liable." This text indicates that no distinction is to be drawn between a private and a governmental party for purposes of Subsection 2412(b).

Congress's primary concern when drafting EAJA was to provide individuals with an adequate financial incentive to bring suit challenging unreasonable government action. H.R. Rep. No. 96-1418, at 5-6 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984. During discussions concerning Section 2412(b), Congress debated whether to adopt a purely discretionary standard or to mandate awards in certain situations. *Id.* at 13-14. In rejecting both of these approaches and choosing a "middle ground," *id.* at 14, Congress calibrated Section 2412(b) to "reflect[] a strong movement by Congress toward placing the [f]ederal [g]overnment and civil litigants on *completely equal footing.*" *Id.* at 9 (emphasis added). By doing so, Congress held all parties to the same legal standard insofar as awards of fees under Subsection 2412(b) are concerned.

Prior to enactment of EAJA, Section 2412 contained a provision allowing either party in a civil action involving the federal government to recover costs but not fees. *See* S. Rep. No. 89-1329 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2527, 2530. The committee report for this previous law specifically stated that "costs may be awarded . . . [to] either the private litigant or the [g]overnment." *Id.* at 2528. Although EAJA displaced this prior law, Congress used the earlier text as a starting point. *See* H.R. Rep. No. 96-1418, at 9, 17. When discussing Subsection 2412(b) specifically, Congress saw its role as providing consistency with the spirit of the prior law — placing the federal government and civil litigants on equal footing. *Id.* at 9. Indeed, pertinent text of the prior law is nearly identical to the language in Subsection 2412(b). The prior law stated, in relevant part, that "a judgment for costs . . . may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action." Pub. L. No. 89-507, 80 Stat. 308 (1966). This same general phraseology is used in Subsection 2412(b), but is expanded to include fees as well as costs.

Precedents confirm that the government may recover attorneys' fees under Subsection 2412(b). In *St. Paul Fire & Marine Ins.*, 4 Cl. Ct. 762 (Kozinski, C.J.), and *Bregstone v. United States*, 4 Cl. Ct. 507 (1984) (Mayer, J.), the courts looked at the statutory language and history to reach the conclusion that the government could recover attorneys' fees from a plaintiff under

6

Subsection 2412(b). *See St. Paul Fire & Marine Ins.*, 4 Cl. Ct. at 766; *Bregstone*, 4 Cl. Ct. at 513. Both courts then applied bad-faith analysis derived from the common law to determine if the government was entitled to fees. *St. Paul Fire & Marine Ins.*, 4 Cl. Ct. at 767; *Bregstone*, 4 Cl. Ct. at 513. Other courts have also awarded the government attorneys' fees under Subsection 2412(b), particularly in tax refund litigation. *See, e.g., Roscoe v. Salazar*, 92 F.3d 1197 (10th Cir. 1996) (Table, text available at 1996 WL 421957, *2) (affirming a district court's award of attorneys' fees as part of its "inherent authority to award attorney fees when the losing party has proceeded in bad faith" (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980))).[5]

C. *Application of Common Law Standards*

The common law traditionally has required that each party must bear its own attorneys' fees. *Alyeska Pipeline*, 421 U.S. at 247. However, this precept has several established exceptions, derived from the inherent power of the courts to award attorneys' fees, including "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 258-59 (quoting *F. D. Rich Co., Inc. v. United States for Use of Indus. Lumber Co., Inc.*, 417 U.S. 116, 129 (1974)); *see also Centex*, 486 F.3d at 1371 (recognizing that bad faith conduct is an adequate basis for a trial court to award attorneys' fees). In particular, a defendant may be awarded attorneys' fees when the lawsuit and its prosecution was frivolous and vexatious. *Sisemore*, 797 F.2d at 271 ("An award of costs and fees may still be awarded for the government in all cases where it must defend against frivolous and vexatious lawsuits." (internal citations omitted)). The underlying rationale of an award of attorneys' fees based on bad faith litigation is punitive. *See Hall v. Cole*, 412 U.S. 1, 5 (1973); *Bregstone*, 4 Cl. Ct. at 513.

In determining that a party acted in bad faith, the court must make factual findings demonstrating meritlessness, knowledge, and improper purpose. *Griffin Industries, Inc. v. United States Env'tl Protection Agency*, 640 F.3d 682, 686 (6th Cir. 2011) (internal citations omitted). Neither a finding of meritlessness nor improper purpose individually is sufficient to find bad faith. *Kerin v. United States Postal Service*, 218 F.3d 185, 190 (2d Cir. 2000) (citing *Sierra Club v. United States Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985)). A party brings a claim in bad faith if "the claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." *Bregstone*, 4 Cl. Ct. at 512

---

[5]Although not citing Section 2412(b), *Sisemore v. United States*, 797 F.2d 268 (6th Cir. 1986), permitted a fee award to the United States against *pro se* plaintiffs seeking a tax refund, citing the trial court's inherent authority to award fees as established in *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 (1975). *See Sisemore*, 797 F.2d at 270-271. In *Sisemore*, the court also held that 26 U.S.C. § 7430, outlining authority to award attorneys' fees to a prevailing party (other than the government) in tax refund claims, superseded EAJA, but did not constrain the court's ability to award fees under the common law. *See id.* at 271 ("[26 U.S.C. § 7430] was enacted to permit costs and fees to be awarded against the government in tax cases when its position was not substantially justified. It was, therefore, simply meant to supersede the Equal Access to Justice Act in tax cases." (internal citations omitted)). Because 26 U.S.C. § 7430 only applies in cases where the prevailing party is a private litigant, it can only be read to supersede Subsection 2412(d) of EAJA, not also Subsection 2412(b).

7

(internal quotations omitted). A court can find improper purpose if the plaintiff's actions during litigation were not "reasonably calculated to yield a victory or at least result in the presentation of a colorable case at trial." *St. Paul Fire & Marine Ins.*, 4 Cl. Ct. at 767.

The government points to three separate circumstances in this case that support a finding of common law bad faith. *See* Def.'s Mot. at 5-8. First, the government asserts that Mr. Heger's fraud on the court, specifically manifested in his claim to have had no income for the years at issue, qualifies as bad faith under the common law standard. *Id.* at 5-6. According to the government, besides stating a falsehood to the court, this fraud indicates that Mr. Heger "knew, from the inception of this case, that he had income and that his suit therefore was meritless (and fraudulent)." *Id.* at 6. Second, the government avers that Mr. Heger failed "to offer any [evidentiary] support for his claims," refused to cooperate with government counsel in discovery, and neglected to prepare adequately for hearings. *Id.* at 6-7. Third, the government contends that during the prosecution of the government's counterclaim, Mr. Heger demonstrated bad faith by denying any income for the 2006 tax year and, after it became evident that he did receive income, refusing to offer any support for his position that this income was not taxable. *Id.* at 7-8. In determining bad faith, the court examines the record as a whole, *see Bregstone*, 4 Cl. Ct. at 514, and must find both lack of merit and improper purpose, *id.* at 513.

Mr. Heger knew from the outset that he had received income during the relevant tax years and that the government considered that income to be taxable. *See Heger II*, 112 Fed. Cl. at 227, 229-30.[6] Furthermore, under the tax laws, Mr. Heger had no basis for a claim that the income was not taxable. The circumstances here are even more egregious than those in *Bregstone* where the court faulted two *pro se* plaintiffs who failed to withdraw their claim after facts became available demonstrating that the claim had no merit. *Bregstone*, 4 Cl. Ct. at 514. The court in *Bregstone* opined that the plaintiffs could have been negligent in their initial assessment of their claim but had no basis to continue to pursue it after the facts were clarified. *Id.* at 513-14. Mr. Heger is in a worse position. He could not honestly claim at any point in the litigation, including at filing, to be unaware of his income for the years in question and the taxability of that income under current law. *Heger II*, 112 Fed. Cl. at 229.

Based upon these circumstances, Mr. Heger could never have had a reasonable belief that he could develop a colorable case to support relief in his favor. *See St. Paul Fire & Marine Ins.*, 4 Cl. Ct. at 767. At every stage of litigation, including his defense of the government's counterclaim, Mr. Heger failed to present "credible evidence" and instead "rested on bare assertions." *Heger II*, 112 Fed. Cl. at 227. Because Mr. Heger is proceeding *pro se*, the court does not hold him to a standard of pleading or analysis that would be expected of an attorney. Nonetheless, his complete failure to have any factual basis for his claims or for his defense to the government's counterclaim demonstrates bad faith. This finding is confirmed by his conduct in

---

[6] Even though Mr. Heger may strongly object to the assessment of taxes against his income, this objection does not excuse his falsehoods before the court to evade these taxes. *Heger II*, 112 Fed. Cl. at 229 (citing *Cheek v. United States*, 498 U.S. 192, 204-05 (1991)).

8

the litigation that forced the government and third parties[7] to expend resources to seek out documentation of Mr. Heger's income, which he would not provide. *See* Tr. 9:24-10:10 (Nov. 26, 2013). The court does not reach this conclusion lightly. Its discretion to award fees for bad faith is exercised with restraint. *See Roadway Express*, 447 U.S. at 764. Such fee-shifting is only invoked when compelling considerations in the interests of justice so require. *See Hall*, 412 U.S. at 5.

### D. *Reasonableness of Fees*

The government seeks fees of $30,344.00, based upon time of 485.5 hours incurred by its attorney of record in defending against Mr. Heger's refund claim and in prosecuting the government's counterclaim. Def.'s Mot. at 8-9.[8] In support, the government has appended to its motion a time report generated from information entered by its attorney into the government's "Tax Doc" case information system. *Id.* at 9 & Decl. of Gregory S. Knapp (Sept. 17, 2013), ECF No. 72-1, Ex. A, ECF No. 72-2. That record shows the number of hours by day devoted to this particular case, but it does not contain a description of the activities performed by the attorney. The government's claim has been adjusted to take account of this circumstance. Specifically, "in recognition if [its] counsel's inability to provide a . . . detailed record of the specific case activities to which daily hours were devoted, [the government] has elected to voluntarily cut its claimed hours in half, from 485.5 to 242.75." *Id.* at 10.[9] Additionally, the government has excluded the hours spent by the more senior attorney in the Tax Division who served as the reviewer for the case, as well as the paralegals who also worked on the litigation. *Id.* at 10 n.7. As a result, the government argues that its claimed hours are reasonable despite the absence of a daily recounting of case-specific activities, citing *Fabi Constr. Co. v. Secretary of Labor*, 541 F.3d 407, 10-12 (D.C. Cir. 2008) (reducing the claimed hours by 25% because the pertinent records contained inadequate detail and lumped tasks together) and *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971-72 (D.C. Cir. 2004) (reducing by 50% a fee request based on 1,058 hours because the time records "lump[ed] together multiple tasks," reflected "duplication of work," and showed inconsistencies).

Because the government's attorneys do not bill at an hourly rate, the government has opted to use the statutory rate of $125 per hour as provided by 28 U.S.C. § 2412(d)(2)(A). Def.'s Mot. at 11. This rate was set by Congress in 1996 as a reasonable hourly rate for

---

[7]A third party, GE Healthcare, the successor of one of Mr. Heger's former employers, had to bear the costs of searching stored files to respond to a subpoena by the government for employment records. Tr. 11:18-12:9 (Nov. 26, 2013).

[8]Generally, the court arrives at a reasonable fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Kerin*, 218 F.3d at 190 (citing *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998)).

[9]Besides the usual research and drafting of filings before the court, the government claims hours that were devoted to discovery of factual information. Def.'s Mot. at 10. The government avers that these hours were necessary to develop an adequate basis for its motion for summary judgment. *Id.*

litigation, subject to adjustment for changes in the cost of living. *See* Pub. L. No. 104-121, § 232(b)(1), 110 Stat. 863 (codified at 28 U.S.C. § 2412(d)(2)(A)); *see also St. Paul Fire & Marine Ins.*, 4 Cl. Ct. at 772 (recognizing the rate then provided in Subsection 2412(d) as a reasonable rate).[10] The government seeks no adjustment for changes in the cost of living since 1996.

The court is satisfied that the hours claimed by the government are reasonable and that the hourly rate is appropriate.

## CONCLUSION

For the reasons stated, the government's application for attorneys' fees under Subsection 2412(b) of the Equal Access to Justice Act, 28 U.S.C. § 2412(b), is GRANTED. The government is awarded attorneys' fees of $30,344.00. As permitted by 26 U.S.C. § 6673(b)(2), the government may collect this award in the same manner as a tax. Accordingly, the clerk shall enter judgment for the government in the specified amount.

It is so ORDERED.

_____
Charles F. Lettow
Judge

---

[10]Because the government has succeeded on its claims in the litigation, there is no concern that counsel is claiming hours spent on unsuccessful arguments. *See Dalles Irrigation Dist. v. United States*, 91 Fed. Cl. 689, 703 (2010).

Also, because an award of attorneys' fees under a finding of bad faith is punitive, the fact that the government's counsel does not bill clients is of no consequence. *See Hall*, 412 U.S. at 5; *Bregstone*, 4 Cl. Ct. at 513.